Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| NORTH SIGHT COMMUNICATIONS, LLC<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE EDUCACIÓN DE PUERTO RICO; JUNTA DE SUBASTAS CENTRAL DEL DEPARTAMENTO DE EDUCACIÓN; JUNTA REVISORA DE SUBASTAS DE LA ADMINISTRACIÓN DE SERVICIOS GENERALES<br><br>Recurridos<br><br>CODECOM, LLC<br><br>Licitador Seleccionado<br><br>SKYTEC, INC.<br><br>Licitador | KLRA202300646 | *Revisión* procedente de la Junta de Subastas Central del Departamento de Educación<br><br>Subasta Núm. SF (OC) 2023-015<br><br>Sobre: Impugnación de Adjudicación de Subasta |

Panel integrado por su presidente el Juez Bermúdez Torres, el Juez Adames Soto y la Juez Aldebol Mora

**SENTENCIA**

En San Juan, Puerto Rico, a 19 de marzo de 2024.

I.

El 16 de mayo de 2023, la Junta de Subastas Central del Departamento de Educación (Junta de Subastas), publicó la *Invitación a Subasta Formal* sobre la subasta *SF (OC) 2023-015*[1] para la adquisición de radios portátiles y móviles para el Departamento de Educación. Entre otras cosas, se indicó que las ofertas tenían que presentarse físicamente en la oficina de la Junta de Subastas y por correo electrónico, en o antes de las 11:00 a.m. del 15 de junio

---

[1] *Subasta para Establecer Contrato para la Adquisición de Radios (Multiprotocolo) Portátiles, Móviles en las Bandas 700/800 VHF y Multiband para el Departamento de Educación.*

Número Identificador

SEN2024_____

de 2023. La apertura de la subasta se realizaría ese mismo día, a las 2:00 p.m. de manera virtual.

Posteriormente, la Junta de Subastas emitió dos avisos de enmienda que les fueron notificados oportunamente a los licitadores. Al respecto, mediante el *Aviso de Posposición #1,* emitido el 9 de junio de 2023, se pospuso la fecha y hora de entrega de ofertas y el acto de apertura hasta nuevo aviso. Mientras, el 11 de agosto de 2023, se emitió el *Aviso de Enmienda #1.* Este dispuso que la nueva fecha de entrega de ofertas sería el 16 de agosto de 2023 y que estas deberían ser entregadas de manera física en las oficinas de la Junta de Subastas y por correo electrónico, en o antes de las 11:00 a.m. de ese día. Además, se notificó que el Acto de Apertura se realizaría en esa misma fecha a las 2:00 p.m.

La aludida *Invitación* incluyó instrucciones y condiciones generales, requiriendo a los licitadores presentar sus ofertas por correo electrónico y de forma física, en un sobre sellado, así como los documentos que debían ser incluidos junto con la oferta. El documento advirtió que el licitador que no adjuntara a su oferta dichos documentos podría ser descalificado.

El 16 de agosto de 2023, la Junta de Subastas celebró el acto de apertura de la subasta de manera virtual. Antes de comenzar, los miembros de la Junta de Subastas advirtieron que el acto de apertura sería grabado. Los tres licitadores que sometieron ofertas para la subasta, en el plazo y de la manera establecida, fueron North Sight Communications, LLC. (NSC), Skytec, Inc. y Codecom. Durante la apertura, la Junta de Subastas abría cada una de las ofertas, validaba si los licitadores habían presentado sus ofertas de forma presencial y electrónica dentro del tiempo establecido, leía el nombre de la compañía en voz alta, los precios cotizados por los licitadores en cada renglón e informaba si el licitador había presentado el "*Bid Bond*" y el certificado de licitadores de la ASG.

El 19 de octubre de 2023, la Junta de Subastas notificó la *Resolución de Adjudicación (Aviso de Adjudicación).* En la misiva, se esbozaron las razones para la adjudicación de la subasta a la licitadora agraciada Codecom y los motivos por los cuales los demás licitadores no resultaron favorecidos. De igual forma, se les apercibió sobre el proceso de reconsideración y revisión judicial correspondiente.

En desacuerdo con la determinación adjudicativa, el 6 de noviembre de 2023, NSC presentó *Solicitud de Revisión* ante la Junta Revisora de la ASG. En esencia, arguyó que la Junta de Subastas incumplió de manera crasa con el proceso establecido en la Sección 7.3.15 del Reglamento 9230, para el acto de apertura de la subasta. Explicó, que los representantes de Skytec y NSC le solicitaron a la Junta de Subastas la oportunidad de revisar todos los documentos presentados por los licitadores y que la Junta consultó las peticiones en privado y determinó que las ofertas no podían ser examinadas por los licitadores durante el acto de apertura e indicó que estas solo iban a estar disponibles para la revisión luego que la Junta de Subastas adjudicara la misma al licitador agraciado. Además, indicó NSC en su reconsideración, que la Junta de Subastas no verificó que las ofertas tuvieran todos los documentos que habían sido requeridos en el pliego de la subasta. Añadió, que tampoco inició y selló todas y cada una de las páginas de las ofertas, ni inició y selló las páginas de las ofertas electrónicamente.

Por último, sostuvo que no se les permitió a los licitadores que estaban presentes examinar los documentos de las ofertas que habían sido presentadas en el acto de apertura y que el funcionario que presidió dicho acto no preparó un acta dentro del término de veinticuatro (24) horas requerido. Señaló que no había forma de saber si los documentos de alguna de las ofertas fueron manipulados, extraviados o añadidos con posterioridad, lo cual,

alega, va en contra del principio de que los procesos de adquisición de bienes por el Gobierno se lleven a cabo con transparencia, eficacia y probidad.

Insatisfecho, y sin que la Junta Revisora atendiera su *Solicitud de Revisión* dentro del término de treinta (30) días de haberse presentado la misma, el 15 de diciembre de 2023, NSC acudió ante nos mediante *Recurso de Revisión Judicial.* Plantea:

> **Erró la Junta de Subastas Central del Departamento de Educación al adjudicar la buena pro de la Subasta a Codecom, a sabiendas de que durante el acto de apertura la Junta de Subastas Central incumplió crasamente con las disposiciones de la Sección 7.3.15 del Reglamento 9230, violando así el principio de que los procesos de adquisición de bienes por el Gobierno se lleven a cabo con trasparencia, eficiencia y probidad.**

NSC adhirió a su recurso *Moción Solicitando Orden*, para que ordenáramos a la Junta de Subastas proveer copia fiel y exacta del video del acto de apertura. Resaltó la importancia de examinar lo acontecido en el acto de apertura para que pudiéramos ejercer nuestra función revisora. El 12 de enero de 2024, emitimos *Resolución* concediendo treinta (30) días a la parte recurrida para que fijara su posición y a la Junta de Subastas, diez (10) días para expresarse en cuanto a la *Moción Solicitando Orden*. En la misma fecha, Codecom, el licitador agraciado, presentó *Oposición a Recurso de Revisión Judicial.*

El 25 de enero de 2024, el Departamento de Educación compareció mediante *Escrito en Torno a Solicitud de Grabación del Acto de Apertura* y junto con esta, hizo entrega de copia fiel y exacta de la grabación del acto de apertura, mediante USB. El 14 de febrero de 2024, el Departamento de Educación presentó *Escrito en Cumplimiento de Resolución*, en el cual planteó, en síntesis, que los errores alegados por NSC van dirigidos a cuestionar el acto de apertura y no a atacar la razonabilidad de la adjudicación, lo que es insuficiente para demostrar que la adjudicación fue irrazonable,

caprichosa o fraudulenta y limita a este tribunal a intervenir debido a la deferencia que debe ser concedida a las decisiones administrativa.

Con el beneficio de las comparecencias de las partes, el expediente judicial, el Derecho y jurisprudencia aplicable, procedemos a resolver.

II.

A.

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), Núm. 38-2017, según enmendada[2], establece nuestra facultad revisora sobre las decisiones emitidas por los organismos administrativos. Esta revisión judicial tiene como propósito limitar la discreción de las agencias y asegurarse de que desempeñen sus funciones conforme a la ley y de forma razonable[3]. En esta dinámica, las decisiones administrativas gozan de una presunción de legalidad y corrección, por lo que las conclusiones e interpretaciones de los organismos administrativos especializados, merecen gran deferencia[4].

**El estándar de revisión de una decisión administrativa se circunscribe a determinar si esta actuó de forma arbitraria, ilegal o irrazonable, constituyendo sus acciones un abuso de discreción[5].** Al desempeñar esta función revisora, estamos obligados a considerar la especialización y experiencia de la agencia, diferenciando entre las cuestiones de interpretación estatutaria, área de especialidad de los tribunales, y las cuestiones propias de la discreción o pericia administrativa[6].

---

[2] 3 LPRA § 9601.
[3] *Ifco Recycling* v. *De Desperdicios Sólidos*, 184 DPR 712, 743 (2012).
[4] *Capó Cruz* v. *Junta de Planificación*, 204 DPR 581, 591 (2020); *Torres Rivera* v. *Pol. de Puerto Rico*, 196 DPR 606, 626 (2016); *Batista, Nobbe* v. *JTA. Directores*, 185 DPR 206, 212 (2012); *Ifco Recycling*, 184 DPR, pág. 744.
[5] *Capó*, 204 DPR, pág. 592; *Torres*, 196 DPR, pág. 626; *Ifco Recycling*, 184 DPR, pág. 745, citando a *Empresas Ferrer* v. *ARPE,* 172 DPR 254, 264 (2007). Énfasis nuestro.
[6] *Ifco Recycling*, 84 DPR, pág. 744; *Maranello et al.* v. *OAT,* 186 DPR 780, 792 (2012).

En tal sentido, estamos facultados a determinar: (1) que el remedio concedido por la agencia fue el apropiado; (2) la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial; y (3) determinar si las conclusiones de derecho fueron correctas mediante su revisión completa y absoluta[7]. Sostendremos las determinaciones de hecho, en tanto y en cuanto obre evidencia suficiente en el expediente de la agencia para sustentarla[8]. En cuanto a las determinaciones de Derecho, tenemos amplia facultad para desplegar nuestra función revisora, pues, estamos en igualdad de condiciones para interpretar los estatutos[9]. Claro, ello no implica que podamos descartar libremente las conclusiones e interpretaciones de la agencia[10], pues es norma reiterada que a toda determinación administrativa le cobija una presunción de regularidad y corrección[11]. Esta presunción, apuntalada en el conocimiento especializado de la agencia, debe respetarse mientras la parte que la impugne no produzca evidencia suficiente para derrotarla[12].

Es decir, se presume que el organismo administrativo posee un conocimiento especializado en aquellos asuntos que le fueron encomendados por el legislador que merece ser visto con respeto y deferencia. Por ello, nuestra función revisora se circunscribe a evaluar la razonabilidad de la decisión recurrida, a la luz de las

---

[7] *Capó*, 204 DPR, pág. 591; *Torres*, 196 DPR, *págs.* 626-627; *Pagán Santiago et al.* v. *ASR*, 185 DPR 341, 358 (2012).

[8] *Capó*, 204 DPR, pág. 591; *Torres*, 196 DPR, pág. 627; *Ifco Recycling*, 184 DPR, *pág.* 744.

[9] 3 LPRA § 9675.

[10] *Batista*, 185 DPR pág. 217.

[11] *Capó*, 204 DPR, pág. 591; *Torres*, 196 DPR, pág. 627; Batista, 185 DPR, pág. 217.; *Ifco Recycling*, 184 DPR, pág. 744.

[12] *Torres*, 196 DPR, pág. 626; *Trigo Margarida* v. *Junta Directores*, 187 DPR 384, 393-394 (2012); *Batista,* 185 DPR pág. 215; *Ifco Recycling*, 184 DPR, pág. 744.

pautas trazadas por el legislador y el criterio de evidencia sustancial[13].

Por esto, una vez una agencia o junta emite una determinación, **los tribunales deben abstenerse de intervenir, salvo en los casos en que se demuestre que la misma fue tomada de forma arbitraria, caprichosa o mediando mala fe o fraude.** Esto debido a que la agencia, por su vasta experiencia y especialización, se encuentra en mejor posición que el foro judicial para determinar el mejor licitador, tomando en consideración los factores esgrimidos tanto por la ley como por su reglamento de subastas[14]. Por lo que, en ausencia de mala fe, fraude o abuso de discreción, ningún postor tendrá derecho a quejarse cuando es elegida otra proposición como la más ventajosa[15]. Una vez adjudicada la buena pro, no se deberá sustituir el criterio de la agencia si no se demuestra que la decisión se tomó de forma arbitraria o caprichosa o mediante fraude o mala fe[16].

## B.

La Ley de la Administración de Servicios Generales para la Centralización de las Compras del Gobierno de Puerto Rico, convirtió a la Administración de Servicios Generales (ASG) en la entidad gubernamental facultada para implementar la política pública relativa a los procedimientos de la adquisición de bienes, obras y servicios del Gobierno de Puerto Rico[17]. Esto, con el propósito de alcanzar mayor efectividad y competitividad en la adquisición de bienes y servicios que redunde en un mejor precio y calidad para el Estado. La ASG, en virtud de las facultades que le

---

[13] *Batista,* 185 DPR, pág. 216; *Accumail P.R.* v. *Junta Sub. A.A.A.,* 170 DPR 821, 829 (2007); *Otero* v. *Toyota,* 163 DPR 716, 729 (2005); *Pacheco* v. *Estancias,* 160 DPR 409, 432 (2003).

[14] *A.E.E.* v. *Maxon,* 163 DPR 434 (2004). Énfasis nuestro.

[15] *Empresas Toledo* v. *Junta de Subastas,* 168 DPR 771 (2006)

[16] *Caribbean Communications Solutions* v. *Policía de Puerto Rico,* 176 DPR 978, 1006 (2009).

[17] *Ley de la Administración de Servicios Generales para la Centralización de las Compras del Gobierno de Puerto Rico de 2019,* Ley Núm. 73 de 23 de julio de 2019, 3 LPRA § 9831 y siguientes.

fueron delegadas por la Ley Núm. 73-2019, adoptó el *Reglamento Uniforme de Compras y de Subastas de Bienes, Obras y Servicios No Profesionales de la Administración de Servicios Generales del Gobierno de Puerto Rico*[18], en el que se establecen todas las normas y los procedimientos a seguir por la ASG en la tramitación de todas sus compras y subastas.

El procedimiento de Solicitud de Propuestas para la adquisición de bienes, obras y servicios no profesionales es un método de licitación en el cual se permite entablar negociaciones entre los licitadores y el Gobierno mientras se produce la evaluación de las propuestas. En dicho método, se les confiere a los licitadores la oportunidad de revisar sus ofertas antes que se adjudique la *buena pro*[19]. De esta forma se logra un procedimiento más flexible que el de las subastas formales y que otorga mayor utilidad cuando se necesita adquirir bienes o servicios especializados los cuales involucran asuntos que pueden ser técnicos y complejos[20].

La sección 7.3.15 del Reglamento 9230, regula el Acto de Apertura. Establece que el acto de apertura deberá estar abierto al público y que toda persona interesada puede asistir al mismo. De igual forma, dispone que el funcionario encargado de presidir el acto de subasta deberá expresar en voz alta, cuál es el número de la subasta, su propósito y el nombre de cada uno de los licitadores que presentaron ofertas. Además, deberá mostrar a todas las personas que estén presentes en el acto los correos electrónicos o los sobres cerrados de las licitaciones, según establecido en el pliego y abrir cada uno y verificar que contienen todos los documentos requeridos en el pliego de la subasta[21]. A su vez, la sección 7.3.15 dispone que el funcionario que presida el acto de apertura deberá inicializar y

---

[18] Reglamento Núm. 9230, de 18 de noviembre de 2019.
[19] 3 LPRA § 9834g.
[20] *Caribbean Communications Solutions* 176 DPR, pág. 996.
[21] Reglamento Núm. 9230 de 18 de noviembre de 2019, Sección 7.3.15

sellar cada una de las páginas de cada licitación y que en caso de una presentación electrónica deberá iniciar y sellar las páginas electrónicas.

De otra parte, la sección 7.3.15 establece que el funcionario deberá leer en voz alta "el número de la partida o reglón para el cual se está presentando oferta, el precio por partida, la marca y modelo, la garantía, si aplica, y la fecha de entrega si es una de las condiciones de la subasta". Estos documentos, se podrán examinar por cualquier persona que esté presente en el acto de apertura, una vez el Secretario de la Junta lea en voz alta todas las ofertas y las haya iniciado y sellado.

Culminado el Acto de Apertura, el Secretario de la Junta que lo presidió, levantará un acta de todas las incidencias que ocurrieron durante la misma, en un término de veinticuatro (24) horas. Dicha acta deberá contener el número y asunto de la subasta, la fecha en que se realizó, la cantidad de ofertas recibidas, los licitadores que cotizaron para una o más partidas y los que no junto a su nombre, la copia del registro de asistencia firmada por los asistentes, cualquier incidente ocurrido durante el acto de apertura y la firma de la persona que presidió el acto.

III.

North Sight Communications, LLC sostiene que la adjudicación de la *buena pro* a Codecom no fue válida debido a que durante el acto de apertura la Junta de Subastas no verificó que todas las ofertas tuvieran todos los documentos requeridos, no permitió a los licitadores presentes examinar los documentos en las ofertas y no inició y selló todas las páginas de las ofertas presentadas físicamente y de manera electrónica. Señala que ello le impide saber si los documentos de las ofertas presentadas fueron manipulados, extraviados y/o añadidos luego del acto de apertura. Arguye que, no surge en el expediente de la subasta que se haya

redactado acta alguna del acto de apertura y, por tanto, la Junta de Subastas actuó en contravención a la Sección 7.3.15 del Reglamento Núm. 9230. Solicita que anulemos la adjudicación de la subasta y que se ordene la celebración de una nueva subasta. Examinemos la validez de su reclamo.

Luego de una revisión cuidadosa del expediente, así como de la regrabación del acto de apertura, concluimos que no existe razón alguna por la cual debamos intervenir con la adjudicación recurrida. Si bien durante el acto de apertura se incurrió en una serie de omisiones las mismas no acarrean la anulación de la adjudicación de la *buena pro*. Tales omisiones, por sí solas, no tornaron la adjudicación irrazonable, caprichosa, fraudulenta o realizada de mala fe. Máximo cuando tampoco se ha logrado demostrar que los errores alegados en el acto de apertura hayan colocado de forma alguna al licitador agraciado en ventaja frente a los otros licitadores.

Según hemos establecido, las agencias pueden adjudicar la subasta al licitador que estas consideren más apropiado, ya que gozan de amplia discreción al considerar las licitaciones y adjudicar o rechazar las propuestas según mejor se ajuste a las necesidades de la agencia. Es la agencia administrativa quien cuenta con los conocimientos técnicos especializados para determinar cuál de las ofertas de los licitadores le es más conveniente. En el caso ante nos, no se configura ninguna de las circunstancias que justificarían retirar la deferencia que debemos a la agencia administrativa sobre la adjudicación impugnada.

IV.

Por los fundamentos antes expuestos, se declara No Ha Lugar el *Recurso de Revisión Judicial* instado.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones